<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>RUTH PATRAS,<br><br>                    Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 08-02079 (KMW-SAK)<br><br>**OPINION** |

APPEARANCES:

ADAMS S. DOMITZ, ESQ.
DOJ-TAX DIVISION, EASTERN SECTION
1275 1ST ST NE, SUITE 10205
WASHINGTON, DC 20002

          *Counsel for Plaintiff United States of America*

SPENCER B. ROBBINS, ESQ.
ROBBINS & ROBBINS, ESQS.
568 AMBOY AVENUE
WOODBRIDGE, NJ 07095

          *Counsel for Defendant Ruth Patras*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This matter originates from a civil federal tax liability suit brought by the United States of America, (the "Government"), against Defendant Ruth Patras pursuant to the Uniform Fraudulent Transfer Act, ("UFTA"), N.J.S.A. §§ 25:2-20, -34.  Opinion, (ECF No. 69) at 2.  A bench trial was held and the Court concluded that Defendant acquired a property through a fraudulent transfer via her husband, Dr. Patras, who was the true owner, to avoid federal income tax liabilities, and a personal judgment against Defendant was entered.  *Id*. at 3-13; *see also* Order, (ECF No. 70). Since then, the Government has sought to collect Defendant's liabilities.

On December 27, 2024, Defendant filed a Motion to Quash, (ECF No. 97).  On January 7, 2025, the Government opposed, (ECF No. 98), and on January 23, 2025, Defendant submitted a certification in reply, (ECF No. 99).  For the reasons that follow, Defendant's Motion to Quash, (ECF No. 97) will be **DENIED**.

## II.    BACKGROUND

As stated above, Defendant was found to be a nominee for her husband, Dr. Athony Patras, ("Dr. Patras"), in a civil federal tax liability suit brought by the Government pursuant to a bench trial.  *See* Opinion at 1-2.  The Court determined that, in a multi-year scheme, Dr. Patras sold his home to a friend, and ultimately that friend sold the home to Defendant, all who were found to be nominees for Dr. Patras in his attempts to avoid his tax liabilities.  *Id*. at 3-9.  The Court found that the transfer to Defendant constituted actual fraud: Defendant was never in a financial position to own the property without the financial support behind the scenes by Dr. Patras, forged several documents, and lied to various financial entities in order to maintain the property and the family's lifestyle.  *Id*. at 10-11, 13-16.  The Court also found that Defendant took out additional loans on

the property, resulting in $1,300,000.00 of mortgage debt, draining the property of its equity. *Id*. at 14-16. The Court granted personal judgment against Defendant in an attempt to recover the value of the property in the amount of $525,614.00. *Id*. at 30-31; *see also* Order, (ECF No. 71).

In June of 2021, almost a decade later, the Government applied for a Writ of Garnishment from the Court because Defendant had not paid her outstanding liabilities pursuant to the Government's February 24, 2013 demand for payment of the judgment. *See* Application for Writ of Garnishment, (ECF No. 79). In January of 2022, the Court granted the Government's Motion to Garnish Property against Defendant. *See* Order Granting Motion regarding Garnished Property, (ECF No. 96). In the years since, the Government has engaged in efforts to collect Defendant's unpaid liability, including post-judgment interrogatories and requests for production, which the Government asserts have been ignored, as well as post-judgment subpoenas to various financial institutions. *See* Opp. at 3.

The motion at bar, filed on December 27, 2024, is a Motion to Quash by Defendant, who asserts that the Government impermissibly subpoenaed the financial records of her adult children and Dr. Patras on December 19, 2024, at JP Morgan Chase Bank, N.A. *See* Motion to Quash. Defendant submits three certifications from Dr. Patras, Ariana Patras, ("Ariana"), and Ciara Patras, ("Ciara"). *Id*. Defendant's daughters assert that their money is separate from their mother's, that they "believe there has not been substantial compliance with the provisions of the Right to Financial Privacy Act of 1978 [("RFPA")], and that the Government is engaging in a "fishing expedition," into the family's finances. *Id*. Ariana attests that she is employed as a medical doctor in North Carolina and that the money she has "earned, saved and spent" is from her personal income. In Ciara's certification, she notes that she believes the Government is "seeking information as to my personal bank account and how I could help my sister, Ariana, purchase a

house," and further noting that she obtained a "six figure settlement from an accident case[.]" *Id*. Dr. Patras asserts that the Government already has his banking account information due to his own monthly obligations to the Internal Revenue Service, ("IRS") and that "[h]aving the Department of Justice seeking the same information from me is wrong." *Id*.

The Government asserts that the subpoena is a valid inquiry based on evidence that suggests that Defendant and Dr. Patras funded the purchase of a new home in Long Branch, New Jersey with their daughter Ariana, as nominee. *See* Opp. at 3. Notably, documents related to the Long Branch home indicate that Dr. Patras and Defendant are "coborrowers" of Ariana, that Defendant has written checks to Ariana nearly every month since May 2022 that "roughly amount to the monthly mortgage payments," and that the closing documents show that $63,930.00 of the closing fees were paid from a JP Morgan Chase Bank, N.A. account with Dr. Patras and Ariana's name on it. *Id*. at 8. According to the Government, Ciara contributed money to close on the home itself. *Id*. at 9. The Government notes that the subpoena request would enable them to determine if Defendant is using her children as nominees to hide her assets and to determine if there has been a violation of the Uniform Voidable Transfer Act, N.J.S.A. § 25:2-20, *et seq*. The Government provided the notices to Dr. Patras, Ariana, and Ciara, notifying them of the subpoena pursuant to the RFPA. *Id*. at Exs. 3-5.

In reply, Defendant simply states that "[t]he children are not concealing their parents['] assets or income." While Defendant states that there are attachments to demonstrate that the children have no involvement with the parents' financials, with the exception that Defendant and Dr. Patras live in "a house owned by Ariana" where they pay rent towards Ariana's mortgage, no documents were attached to the certification. *See* Reply.

### III.    LEGAL STANDARDS

#### A.  Federal Rule of Civil Procedure 45

Federal Rule of Civil Procedure 45, ("Rule 45"), governs the issuance and processing of subpoenas by the Court.   Specifically, Rule 45(d)(3) governs the Court's power to quash subpoenas, providing in pertinent part:

> (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>     (i) fails to allow a reasonable time to comply;
>     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>     (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).  The moving party seeking to quash a subpoena faces "a heavy burden" to demonstrate that "the requirements of Rule 45 are satisfied."  *PNC Equip. Fin. LLC, v. Mariani*, No. 19-76, 2021 WL 4078864 at *1 (D.N.J. Sept. 8, 2021) (internal citation omitted).

### IV.    DISCUSSION

When considering a motion to quash the Court is required to examine "whether the Defendants have standing to bring this motion, the relevancy of the production sought, whether any privilege or protection applies to the production, and whether the subpoena subjects Defendants to undue burden." *Malibu Media, LLC, v. Doe*, No. 15-1742, 2015 WL 5996319 at *1 (D.N.J. Oct. 14, 2015).  The first, and most important issue the Court must address at the outset is the assertion that Defendant does not have standing to quash the subpoena on behalf of her children and Dr. Patras.  "Generally, any motion to Quash or modify a subpoena directed towards a non-party, must be brought by the non-party itself . . . However, a party to the action will have standing to quash or modify a non-party subpoena when it claims a privilege or privacy interest in the information sought by the non-party." *Schmulovich v. 1161 Rt. 9 LLC*, No. 7-597, 2007 WL

2362598 at *2 (D.N.J. Aug. 13, 2007) (holding that a party had standing to quash a subpoena sent to a third-party bank with respect to bank account records of that person).  Standing is often found where a person moves to quash a subpoena that seeks to discover his or her personal information. *See Malibu Media, LLC*, 2015 WL 5996319 at *2; *see also Price v. Cnty. Of Salem*, No. 22-6042, 2024 WL 1006263 at *3 (D.N.J. Mar. 8, 2024) (collecting cases) (showing that a plaintiff had standing to quash a subpoena seeking his personal identifying information from a third-party internet service provider, and where a subpoena was served on a third-party employer seeking personal employment records).

Here, Defendant is attempting to quash subpoenas directed to a third-party for information related to financial accounts of her two adult children, Ariana and Ciara, and her husband, Dr. Patras.  The certifications presented by Defendant attest that the accounts sought belong to her daughters and Dr. Patras, and do not include her.  *See* Motion to Quash.  Defendant does not assert any personal interest or privilege applicable to these accounts that would grant her standing to quash or modify the subpoenas, or provide any argument related to her lack of standing at all.[1] She also does not make any representations that the subpoena presents an undue burden, or that there are any additional privileges or protections relevant to these accounts.  Therefore, Defendant fails to carry her "heavy burden" to demonstrate that "the requirements of Rule 45 are satisfied," and the Court must deny her Motion to Quash.  *See Malibu Media, LLC*, 2015 WL 5996319 at *1.

For completeness, the Court will consider the propriety of the Government's subpoenas to the Patras family pursuant to the RFPA, which addresses the "relevancy" prong pursuant to Rule

---

[1] As to the alleged violation of the RFPA, Defendant would not be able to assert that violation herself because if the Government was seeking her records, 12 U.S.C. § 3413(e) would apply.  *See* 12 U.S.C. § 3413(e) ("Nothing in this title [12 USCS §§ 3401 et seq.] shall apply when financial records are sought by a Government authority under the Federal Rules of Civil or Criminal Procedure [USCS Rules of Civil and Criminal Procedure] or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties.").

45.  The RFPA, 12 U.S.C. §§ 3401-3422, provides the boundaries of disclosure of financial records by banks, created to balance the interest to protect the customers of financial institutions from unwarranted intrusion into their records and the needs of legitimate law enforcement activities. *Fisher v. Wachovia Bank*, No. 6-2876, 2007 WL 81882 at * 3 (D.N.J. Jan. 4, 2007).  The RFPA provides in pertinent part that "no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and . . . (4) such financial records are disclosed in response to a judicial subpoena[.]"  12 U.S.C. § 3402.  The RFPA provides that a customer may file a motion to quash a judicial subpoena pursuant to a formal written request with copies served upon the governmental authority.  *See* 12 U.S.C. § 3410(a).  The affidavit from the customer must state the reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the governmental authority in its notice, or that there has not been substantial compliance with the provisions of the RFPA.  *Id*.  Here, it appears that Dr. Patras, Ciara, and Ariana have complied with the statute to require district court review. *See* Motion to Quash.[2]  However, the Court's inquiry is "narrowly circumscribed" to two questions: 1) whether the investigation is for a proper statutory purpose, and 2) whether the documents the agency seeks are relevant to the investigation.  *Neary v. Gen. Servs. Admin.*, No. 20-720, 2020 WL 634163, at *2 (D.N.J. Feb. 7, 2020).

First, the investigation is related to a proper statutory purpose.  The RFPA itself permits a governmental authority to obtain financial records pursuant to a judicial subpoena if there is reason to believe that the records sought are relevant to a "legitimate law enforcement inquiry."  12 U.S.C.

---

[2] The Court notes that it appears that the Government also complied with the RFPA with regard to providing the required notice to Dr. Patras, Ariana, and Ciara.  *See* Opp. at Exs. 3-5.  The Court further notes that the non-parties did not request a hearing to further elucidate their objections to the subpoena.

§ 3407(1).  12 U.S.C. § 3401(8) defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto."  12 U.S.C. § 3401(8).  Here, the Government is pursuing an investigation to collect the personal judgment ordered against Defendant after a bench trial, which was "commenced at the request and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, pursuant to 26 U.S.C. § 7401."  *See* Compl., (ECF No. 1).[3]  Pursuant to the Internal Revenue Code, the Government is empowered to "direct a civil action to be filed in a district court . . . to enforce a lien regarding federal taxes where there has been a refusal or neglect to pay them against property where the taxpayer holds right, title, or interest."  *United States v. Hovnanian*, No. 18-15099, 2022 WL 17959583 at *11 (D.N.J. Dec. 27, 2022).  Further, discovery in aid of collecting judgment or execution is a legitimate enforcement proceeding permitted by the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, *et seq*., which authorizes the Government to obtain discovery regarding the financial condition of a debtor pursuant to the Federal Rules of Civil Procedure, which under Federal Rule of Civil Procedure 69, permits discovery from any person including the judgment debtor.  *See United States v. Allen*, No. 11-989-02, 2020 WL 1034395 at *5 (D. Ariz. Jan. 31, 2020).  Therefore, the Government's investigation is related to a proper statutory purpose.

Second, the Court must determine whether the records sought are relevant to the Government's inquiry.  "[W]hile the ability of the government to obtain such information may not rest upon governmental whim, it remains clear that the standard of relevance utilized by courts has

---

[3] 26 U.S.C. § 7401 provides that "[n]o civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." 26 U.S.C. § 7401.  In this case, the Government as represented by the Department of Justice is the delegate authorized to commence proceedings.

been quite broad." *Whitburn v. United States Dep't of Treasury*, No. 93-139, 1993 WL 544285 at *2 (D. Kan. Dec. 9, 1993); *see also Neary*, 2020 WL 634163, at *3.  Here, a personal judgment against Defendant was issued in the amount of $525,614.00 in December of 2012 after a bench trial found that Defendant violated the UFTA when she acted as a nominee for Dr. Patras, where: she received and held a property that she could not afford; she forged several documents, and lied to various financial entities, in order to maintain the property and the family's lifestyle; she took additional loans on the property, resulting in $1,300,000.00 of mortgage debt, draining the property of its equity; all in an attempt for Dr. Patras to avoid significant tax liabilities. *See* Opinion, (ECF No. 70), and Order, (ECF No. 71).  The Government has been attempting to collect Defendant's judgment for the last decade, obtaining a Writ of Garnishment, seeking post-judgment interrogatories, and other requests for production that Defendant has allegedly ignored. *See* Order Granting Motion regarding Garnished Property; Opp. at 3.  Now, in 2024, the Government asserts that it has documents related to a Long Branch, New Jersey home that indicate that Dr. Patras and Defendant are "coborrowers" of Ariana, and that the closing documents show that $63,930.00 of the closing fees were paid from a JP Morgan Chase Bank, N.A. account with Dr. Patras and Ariana's name on it.  Opp. at 8.  According to the Government, Ciara contributed money to close on the home itself. *Id*. at 9.  It is not clear if Ciara lives in the Long Branch home, but it is uncontested that Dr. Patras and Defendant live in the Long Branch home while Ariana is employed in North Carolina. *See* Motion to Quash; Reply. The Government asserts that Defendant has written checks to Ariana nearly every month since May 2022 that "roughly amount to the monthly mortgage payments," of this property. *See* Opp. at 8.  This fact is not contested: Defendant herself admits that that she and Dr. Patras "pay rent" to Ariana that goes to the mortgage of the home, establishing a connection that is similar to *Sharma v. United States*, where the third-party

9

challenging the summons had made at least three transfers from his financial account to his brother, who was the target of the investigation, whereby the court found "it cannot be said that his only connection to the investigation is his familial relationship with the target." *Sharma v. United States*, No. 21-3173, 2021 WL 7878968 at * 4 (D.N.J. Jul. 20, 2021). Here, the Government has presented sufficient reason to investigate the financials of this family with such co-mingled finances given that Defendant was found liable for being a nominee for Dr. Patras and engaging in fraudulent real estate transactions.

It is reasonable to believe that the Government's subpoena request would enable it to determine if Defendant is using her children as nominees to hide her assets and to determine if there has been a violation of the Uniform Voidable Transfer Act.[4] The Court finds that the subpoena at issue is seeking information that is highly relevant to the investigation and is tailored to those adult children involved in the Long Branch real estate transaction.[5]

Therefore, the Court concludes that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate, and there is a reasonable belief that the records sought are relevant to that inquiry, satisfying the requirements of the RFPA. 12 U.S.C. § 3410(c). Thus, the Court must deny Defendant's Motion.

## V.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Quash, (ECF No. 97), is **DENIED.** An order consistent with this Opinion will be entered.

---

[4] On February 25, 2020, the New Jersey Legislature amended the New Jersey Uniform Fraudulent Transfer Act, which, among other things, renamed the Act to the Uniform Voidable Transactions Act. *Leonard v. Bayuk*, No. 23-21314, 2024 WL 3833516 at *2 n.2 (D.N.J. Aug. 14, 2024) (citing L. 2021, c. 92 § 1); *see also* N.J.S.A. § 25:2-20.
[5] The Court notes that Anthony C. Patras, Defendant's son, was included in her Reply. The Motion to Quash does not include Defendant's son, and the Court notes that it appears that the Reply discusses multiple subpoenas, but only the JP Morgan Chase Subpoena is the subject of the motion at bar, and only includes Dr. Patras, Ariana, and Ciara, who were involved in the purchase of the Long Branch home.

July 31st, 2025

*Karen M. Williams*

KAREN M. WILLIAMS, U.S.D.J.